IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| MARCEL F.M. HERBERMANN, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>3D SYSTEMS CORPORATION, JEFFREY A. GRAVES, and JEFFREY D. CREECH,<br><br>   Defendants. | C.A. No.  1:25-cv-00734-GBW<br><br>Hon. Judge Gregory B. Williams<br><br><u>CLASS ACTION</u> |

## <u>NIELS VOCHTEN'S MOTION FOR RECONSIDERATION</u>

Niels Vochten respectfully submits this motion for reconsideration, pursuant to Local Rule of Civil Practice and Procedure 7.1.5 ("Rule 7.1.5"), for reconsideration of this Court's Order (Dkt. No. 16) denying Mr. Vochten's Lead Plaintiff Motion (as defined below) (Dkt. No. 8).

## NATURE AND STAGE OF PROCEEDINGS

The Complaint filed in this action (the "Action") asserts claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC") on behalf of all persons or entities that purchased or otherwise acquired 3D Systems

1

Corporation ("3D Systems") securities during the Class Period. The Action is in the preliminary stages of litigation and, pursuant to the PSLRA, requires the appointment of a Lead Plaintiff and Lead Counsel.

On August 12, 2025, the statutory motion deadline, Mr. Vochten filed a motion seeking appointment as Lead Plaintiff and approval of his selection of Pomerantz LLP as Lead Counsel. Dkt. No. 8. Mr. Vochten was the only putative Class member to apply for Lead Plaintiff appointment in this Action. On October 9, 2025, Defendants filed a letter stating their non-opposition to Mr. Vochten Lead Plaintiff Motion. Dkt. No. 15. Then, on October 14, 2025, this Court entered an Order denying Mr. Vochten's Lead Plaintiff Motion. Dkt. No. 16.

Pursuant to Rule 7.1.5, Mr. Vochten now respectfully moves the Court for reconsideration of its Order.

### SUMMARY OF THE ARGUMENT

Under Rule 7.1.5, "[a] court may alter or amend its judgment only if the movant demonstrates at least one of the following: (i) a change in the controlling law; (ii) new evidence has become available; or (iii) a need to correct a clear error of law or fact or to prevent manifest injustice." *Hum. Genome Scis., Inc. v. Amgen, Inc.*, 2008 WL 11515904, at *1 (D. Del. Aug. 21, 2008) (citing *Samuel v. Carroll*, 505 F. Supp. 2d 256, 261 (D. Del. 2007)). Here, Mr. Vochten most respectfully submits that the Court's Order: (1) reflects a clear error of fact to the extent that it

misapprehends Mr. Vochten's damages analysis (Dkt. No. 10-1) (the "Damages Analysis"): (2) reflects a clear error of law to the extent that it denied Mr. Vochten's motion due to the quantum of his investment losses; and (3) reflects a second clear error of law to the extent that it disregards the PSLRA's nondiscretionary instruction that the Court "shall" appoint as lead plaintiff" the movant or initial plaintiff that satisfies the statute's "most adequate plaintiff" criteria.    15 U.S.C. § 77z-1(a)(3)(B)(i)

## ARGUMENT

## I.    LEGAL STANDARD

A motion for reconsideration should be granted if the moving party can demonstrate, *inter alia*, "the need to correct a clear error of law or fact or to prevent manifest injustice." *General Electric Co. v. LPP Combustion, LLC*, 2024 WL 3510307, at *1 (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  Reconsideration is warranted "if the Court has patently misunderstood a party . . . or made an error not of reasoning but of apprehension." *Cirba v. VMware, Inc.*, 2023 WL 2428716, at *1 (D. Del. Mar. 9, 2023).

## II.    THE COURT'S ORDER INCLUDED CLEAR ERRORS OF LAW AND FACT

### a.  Vochten Was Not the Only 3D Systems Shareholder During the Class Period

The Court's Order appears to rest, in part, on its reading of Mr. Vochten's Damages Analysis (Dkt. No. 10-1), which the Court construed as "list[ing] Mr.

3

Vochten as the only shareholder [of 3D Systems] during the Class Period." Dkt. No. 16. Based on this factual finding, the Court concluded that "this action may not be appropriate as a class action" because "the putative class it not so numerous that joinder of all members is impracticable." *Id.*

Reconsideration of the Court's Order is warranted "if the Court has patently misunderstood a party . . . or made an error not of reasoning but of apprehension." *Cirba*, 2023 2428716, at *1. Here, Mr. Vochten most respectfully submits that the Court's conclusions regarding the numerosity of the Class appear to stem from a misunderstanding of Mr. Vochten's Damages Analysis. The Damages Analysis sets forth *only Mr. Vochten's own* financial interest metrics (*i.e.*, shares purchased and sold, funds expended, shares held at the end of the Class Period, and estimated loss) with respect to his Class Period investments in 3D Systems securities, for the specific purpose of demonstrating the basis only for Mr. Vochten's claimed financial interest in this litigation. The Damages Analysis does *not* purport to list *all* investors who purchased or otherwise acquired 3D Systems securities during the Class Period— nor could it practicably do so at this stage. As Mr. Vochten alleged in his Complaint:

> While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by 3D Systems or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

Dkt. No. 1 ¶ 50.

While the precise number of Class members is unknown at this stage of the litigation, Mr. Vochten demonstrably is *not* the only investor who purchased or otherwise acquired 3D Systems securities during the Class Period—that, is he is not the only investor who would qualify as a member of the putative Class in this Action. A review of available data makes it clear that numerous investors other than Mr. Vochten were actively trading in 3D Systems stock during the Class Period. Publicly available market data identifies hundreds of institutional investors that purchased shares during the Class Period. *See* Declaration of Ryan M. Ernst in Support of Motion for Reconsideration ("Ernst Decl."), Exhibit ("Ex.") A. Likewise, an analysis of Class Period trading data indicates that a total of *561,010,121* shares of 3D Systems stock changed hands during the Class Period. *See* Ernst Decl., Ex. B. Given that Mr. Vochten's own Class Period purchases of 49 3D Systems shares accounts for only a miniscule percentage of the stock's aggregate trading volume, it can only be true that he was but one of many investors who purchased 3D Systems shares during the Class Period. As such, Mr. Vochten respectfully submits that he is not the only investor who would qualify as a member of the putative Class in this Action.

### b. Courts Routinely Appoint Investors with Modest Investment Losses to Serve as Lead Plaintiffs in PSLRA Actions

The Court's Order also found that Mr. Vochten's relatively modest investment loss ($199) "belies the credibility of [his] representation that he is the 'most adequate plaintiff'" of the Class in this litigation and thus "the appropriateness of [appointing] Mr. Vochten as the [L]ead Plaintiff or being able to select Lead Counsel[.]" Dkt. No. 16.

Respectfully, reconsideration of the Court's Order is necessary "to correct a clear error of law." *Hum. Genome Scis.*, 2008 WL 11515904, at *1 (citing *Samuel*, 505 F. Supp. 2d at 261). Specifically, under federal securities jurisprudence, there is no minimum financial interest threshold under which a movant is presumed to be an inadequate class representative within the meaning of Fed. R. Civ. P. 23. *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57 (S.D.N.Y. 2022), is instructive. In *LifeStance*, at the lead plaintiff appointment stage, the defendants argued that a lead plaintiff movant with a relatively modest investment loss was in effect *per se* inadequate under Rule 23.[1] The court rejected that argument, finding it "at odds with both the text and the purpose of PSLRA, not to mention one of the main purposes of aggregate litigation itself." *Id.* at 64. As the court explained:

---

[1] Significantly, the Defendants in this Action have not opposed Mr. Vochten's Lead Plaintiff Motion, either on the basis of his claimed investment losses or otherwise. *See* Dkt. No. 15.

6

> [W]hen Congress enacted the PSLRA, its concern was to curtail the vice of 'lawyer-driven' litigation, *i.e.*, lawsuits that, because of the huge potential fees available in contingent securities fraud actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders ostensibly represented.  It did this by establishing a competitive process that a qualified, motivated entrant—*perhaps even one with a small personal stake*—might win.

> Declining to appoint a movant as lead plaintiff simply because he has little at stake would also be inconsistent with a key purpose of aggregate litigation. The raison d'etre of the class action is to bring justice to individual plaintiffs who have meritorious claims but relatively little at stake.  *It would be altogether incongruous to decline to appoint a lead plaintiff simply because the candidate class representatives are the very people who are supposed to benefit from proceeding as a class.*

*Id.* at 65.  (Emphases added.) (Internal citations and quotations omitted.)

Accordingly, courts routinely appoint even movants with relatively small investment losses—that is, comparable to Mr. Vochten's—as lead plaintiffs in PSLRA actions.  *See, e.g.*, *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 20-CV-4953 (JPO), 2020 WL 10692524, at *2 (S.D.N.Y. Sep. 24, 2020) (appointing lead plaintiff claiming a loss of $139, finding that movant's engagement in the litigation "evidence[d] . . . a 'sufficient interest in the outcome of the case,' as required by Rule 23 and notwithstanding his *de minimis* losses"); *Lifestance*, 641 F. Supp. 3d at 64-65 (appointing lead plaintiff claiming a loss of $385 over defendants' objections, noting that the key purpose of aggregate litigation is to "bring justice to individual plaintiffs who have meritorious claims but relatively little at stake"); *Damri v. LivePerson, Inc.*, No. 23 Civ. 10517 (PAE), 2024 WL 1242510, at *4-5 (S.D.N.Y.

Mar. 22, 2024) (appointing lead plaintiff claiming a loss of $375 over defendants' objections, noting "[t]hat [movant's] loss pales before those of lead plaintiffs in other putative securities class actions does not mean he lacks a personal interest in recovering that loss"); *Fagen v. Enviva Inc.*, No. DKC 22-2844, 2023 WL 1415628 (D. Md. Jan. 31, 2023) (appointing lead plaintiff claiming a loss of $721, finding movant's attestations to the court demonstrated his adequacy).

Respectfully, whether an investment loss qualifies as significant is far too subjective for courts to adjudicate with any meaningful consistency.  While $199 might appear to be a modest amount, it was plainly significant enough to Mr. Vochten to motivate him to retain counsel, file this Action and seek appointment as Lead Plaintiff.  He has submitted a detailed Declaration attesting to his understanding of the responsibilities of a Lead Plaintiff and his readiness to undertake those responsibilities on behalf of the Class.  *See generally* Dkt. No. 10-4.  His active engagement in this litigation to date should reassure the Court that he stands ready and able to vigorously prosecute the claims of the Class in this litigation, which is precisely what Fed. R. Civ. P. 23's adequacy standard requires.

### c. Denial of Mr. Vochten's Lead Plaintiff Motion Disregards the PSLRA's Nondiscretionary Instruction to Appoint a Lead Plaintiff in this Action

Finally, the denial of Mr. Vochten's Lead Plaintiff motion—the only such motion before the Court—would result in the appointment of no Lead Plaintiff at all.

8

Mr. Vochten respectfully submits that this constitutes "a clear error of law", *Hum. Genome Scis.*, 2008 WL 11515904, at *1, because the PSLRA is unequivocal in its statutory instruction that, in putative class actions alleging violations of the federal securities laws, courts "*shall* appoint as lead plaintiff" the movant or initial plaintiff that satisfies the statute's "most adequate plaintiff" criteria.   15 U.S.C. § 77z-1(a)(3)(B)(i) (emphasis added).   The statutory language ("shall") is mandatory, not discretionary—*i.e.*, it contemplates that a court, if faced with at least one candidate for Lead Plaintiff who meets the PSLRA's criteria, must appoint a Lead Plaintiff from among those candidates.   Here, as set forth in more detail in his motion brief, Mr. Vochten satisfies all of the PSLRA's criteria for appointment as Lead Plaintiff— Mr. Vochten timely filed a motion for appointment as Lead Plaintiff on the August 12, 2025 statutory motion deadline (*see* Dkt. No. 8) and, as the only member of the putative Class seeking appointment as Lead Plaintiff, Mr. Vochten by default has the largest financial interest of any applicant.

Failing to appoint a Lead Plaintiff in this Action will prejudice the Class by creating confusion or otherwise delaying the prosecution of its securities fraud claims against the Defendants and would likewise be judicially inefficient.   Absent any disposition of these claims on the merits, if the Court declines to appoint a Lead Plaintiff in the Action, either Mr. Vochten will continue prosecuting his claims as an individual named Plaintiff without the Lead Plaintiff designation (indeed, nothing

in the PSLRA prevents him from doing so) or a substantively identical complaint will most likely be re-filed in a different court.  In either event, denial of Mr. Vochten's Lead Plaintiff motion will not dispose of either the Class's or Mr. Vochten's claims—rather, it will merely delay adjudication of these claims and potentially result in duplicative litigation.  Mr. Vochten most respectfully submits that the PSLRA was not intended to yield such an outcome.

## CONCLUSION

For the foregoing reasons, Vochten respectfully requests that the Court grant Mr. Vochten's motion for reconsideration and issue an Order: (1) appointing Vochten as Lead Plaintiff for the Class; and (2) approving his selections of Pomerantz as Lead Counsel and Bielli & Klauder as Liaison Counsel for the Class.

Dated:  October 28, 2025

Respectfully submitted,

**BIELLI & KLAUDER, LLC**

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Niels Vochten and Proposed Lead Counsel for the Class*

*/s/ Ryan M. Ernst*
Ryan M. Ernst, Esq. (No. 4788)
1204 N. King Street
Wilmington, DE 19801
Main: (302) 803-4600
Direct: (302) 321-5411
rernst@bk-legal.com

*Counsel for Lead Plaintiff Movant Niels Vochten and Proposed Liaison Counsel for the Class*

10

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Niels Vochten*

11